UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE R. JOHNSON, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 1:21-cv-04117 |
| v. | ) ) ) |
| HARLEY-DAVIDSON FINANCIAL SERVICES, INC., | ) ) ) |
| Defendant. | ) |

**HARLEY-DAVIDSON FINANCIAL SERVICES, INC.'S**
**MOTION TO COMPEL ARBITRATION**

Defendant Harley-Davidson Financial Services, Inc. ("HDFS"), by and through its counsel, McGuireWoods LLP, hereby submits this Motion to Compel Arbitration (the "Motion") pursuant to Rule 12(b)(3), in conjunction with its Declaration of Hemlata Mistry in support of the Motion to Compel Arbitration, and in support thereof states as follows:

**INTRODUCTION**

HDFS files this Motion to Compel Arbitration requesting the Court to enter an order staying these proceedings and compelling Plaintiff Christine R. Johnson ("Plaintiff") to pursue her claims against HDFS in arbitration. As explained in detail below, Plaintiff's claims against HDFS are subject to arbitration pursuant to the underlying Contract between herself and HDFS. It is undisputed that Plaintiff executed the arbitration agreement, that Plaintiff's claims fall within the ambit of the arbitration provision she signed, and that the transaction relates to interstate commerce. Indeed, Plaintiff filed this action in arbitration before refiling it in Court, effectively conceding that all requirements for arbitration were met.

1

The sole issue in dispute appears to be Plaintiff's position that HDFS has waived the right to arbitrate, because the specific arbitration provision she signed had not been registered with the American Arbitration Association ("AAA") before she submitted her arbitration claim. As discussed more fully below, that argument lacks merit, and in any event, the registration issue has been addressed and nothing prevents Plaintiff from submitting her dispute to arbitration, mooting her sole objection to arbitration. Accordingly, this Court should dismiss this action and order Plaintiff to pursue her claims against HDFS in arbitration.[1]

## BACKGROUND

On August 22, 2020, Plaintiff purchased a used 2018 Harley-Davidson FLHTK Ultra Limited, VIN 1HD1KND13JB644935 (the "Motorcycle") from Chi-Town Harley-Davidson (the "Dealer"). Exh. 1 (Declaration of Hemlata Mistry ("HDFS Decl.")) ¶ 6. Plaintiff subsequently executed a Promissory Note and Security Agreement (the "Contract") with Eaglemark Savings Bank ("ESB") in order to finance the purchase. HDFS Decl. ¶¶ 6-7, Exh. A (Contract). The Contract was assigned by ESB to HDCC, and as a result, HDCC acquired all of ESB's rights with respect to the Contract. HDFS Decl. ¶ 6, Exh. A. HDCC and ESB are both wholly owned subsidiaries of HDFS. HDFS Decl. ¶ 4. The Arbitration Provision applies to HDFS as it includes "ESB and/or any of ESB's successors, assigns, parents, subsidiaries or affiliates…" HDFS Decl., Exh. A.

Pursuant to the Contract, ESB financed Plaintiff's purchase of the Motorcycle. HDFS Decl. ¶ 6, Exh. A. In exchange, among other promises, Plaintiff agreed to make monthly payments pursuant to the Contract. HDFS Decl. ¶ 6, Exh. A. Plaintiff also agreed to arbitrate "any and all claims" between herself and HDFS. *See id* at ¶ 7.

---

[1] In addition to arbitration, HDFS specifically reserves its right to assert any and all affirmative defenses and/or statutory or common law defenses available to it.

Specifically, the Contract includes an Arbitration Provision that makes clear that Plaintiff must submit any claims against HDFS to arbitration:

> **26. Dispute Resolution and Arbitration. Agreement to Arbitrate.**
>
> **Any arbitration under this Agreement will take place on an individual basis; class actions, class arbitrations, and representative actions are not permitted.**
>
> **You expressly waive any right to have and arbitrate a class action and You will not be able to participate as a representative or member of any class of claimants ("Class Action Waiver").**
>
> **You also agree that, by entering into this Contract, You and We each waive any right to a trial by jury.**
>
> This arbitration provision relates to a transaction…involving interstate commerce. The parties acknowledge and agree that this clause and the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) shall govern any and all Claims (defined below) between You…and ESB and/or any of ESB's successors, assigns, parents, subsidiaries, or affiliates…. The parties agree to arbitrate any and all claims, controversies, or disputes including but not limited to those arising out of or relating to this Contract, or the sale of this Contract, whether in contract, tort, statute, or otherwise, as well as recovery of any claim under this Contract. Any Claims, including but not limited to the applicability of this arbitration clause, shall be resolved by neutral binding arbitration on an individual basis without resort to any form of class action or any other collective or representative proceeding before the American Arbitration Association ("AAA" or "Arbitration Forum").

HDFS Decl.. ¶ 7, Exh. A. The Arbitration Provision provides that arbitration shall be before the American Arbitration Association. *Id*.

On August 3, 2021, Plaintiff filed the instant action. Plaintiff claims that HDFS violated the Telephone Consumer Protection Act by calling her with pre-recorded voices messages after she revoked her consent. *See* ECF No. 1. Based on these allegations, Plaintiff asserts causes of action against HDFS for: (1) violation of the Telephone Consumer Protection Act ("TCPA"); and (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. *Id*.

Plaintiff initially filed this action in the American Arbitration Association ("AAA") in June 2021. During July 2021, HDFS learned that the AAA had not registered the June 2019 version of

HDFS' arbitration clause. HDFS Decl. ¶ 10. Upon learning of this registration issue, HDFS subsequently took action to contact AAA, determine the appropriate steps for registration, and completed the registration process of the June 2019 version of the arbitration clause. *Id*. ¶ 11. HDFS submitted the June 2019 version of the arbitration clause to AAA for registration. *Id*. As of October 18, 2021, the AAA has confirmed that the June 2019 version of the arbitration clause is registered with AAA. *Id*. ¶ 12.

Prior to filing this Motion, HDFS notified Plaintiff's counsel of its intent to compel arbitration of Plaintiff's claims and sought Plaintiff's consent to arbitrate pursuant to the Contract. Plaintiff has refused to consent to arbitrate her claims against HDFS, necessitating the filing of this Motion.

## ARGUMENT

**A.     Applicable Federal And Nevada Law Apply To The Contract.**

As an initial matter, the contract between Plaintiff and HDFS forming the basis for the claims asserted here contains a choice of law provision providing that applicable federal and Nevada law apply to this contract. HDFS' Decl., Exh. A at 4, § 22. Both federal common law and Illinois choice of law rules follow the Restatement (Second) of Conflict of Laws, which is a "most significant relationship" test. *Moore v. Motor Coach Industries, Inc.*, 487 F.Supp.2d 1003, 1008 (N.D. Ill. 2007); *Cont'l Vineyard, LLC v. Vinifera Wine Co., LLC,* 973 F.3d 747, 758 (7th Cir. 2020). So long as Nevada has a substantial relationship to the parties or their transaction, and Nevada law is not contrary to a fundamental policy of Illinois, Nevada law will apply to the extent issues are not addressed by the FAA.

Here, Nevada has a substantial relationship to the parties and their transaction. Plaintiff contracted with ESB, a lender located in Nevada and regulated by the State of Nevada Department

4

of Business and Industry, Financial Institutions Division, to purchase the Motorcycle. HDFS' Decl., Exh. A. Nevada is home to ESB's main office. *Id*. at 1. Further, Plaintiff willingly agreed to execute the contract with the Nevada choice of law provision. In addition, there is no fundamental conflict between Nevada and Illinois law on these individual claims. Finally, and perhaps most importantly, the FAA applies to the Contract and there should be no discrepancy in how Nevada and Illinois apply the FAA to the facts of this case.

Therefore, the Court should apply applicable federal and Nevada law to Plaintiff's claims and HDFS' Motion to Compel Arbitration. In the alternative, should the Court find that Illinois choice of law should apply, HDFS has also set forth the basis to compel arbitration pursuant to the FAA and Illinois law.

**B.     The Federal Arbitration Act Governs The Arbitration Of Plaintiff's Claims.**

The Federal Arbitration Act ("FAA") provides that an agreement to submit commercial disputes to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (*citing* 9 U.S.C. § 2). The FAA was designed "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," and to place such arbitration agreements "upon the same footing as other contracts." *Dean Witter Reynolds Inc.*, 470 U.S. at 219-220; *Scherk v. Alberto-Culver Co.*, 417 U.S., 506, 511 (1974). While legislators were aware that the Act would encourage the expeditious resolution of disputes, its passage "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." *Dean Witter Reynolds Inc.*, 470 U.S. at 220.

Nevada law recognizes that "strong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation."

*D.R. Horton v. Green*, 120 Nev. 549, 96 P.3d 1159, 1162 (Nev. 2002), *overruled on other grounds*, *U.S. Home Corp. v. Michael Ballesteros Tr.,* 134 Nev. Adv. Op. 25, 415 P.3d 32, 42 (2018). Law and public policy favor arbitration, and the party seeking to compel "arbitration is entitled to the benefit of the doubt." *IBEW Local 2150 v. NextEra Energy Point Beach, LLC,* 762 F.3d 592, 594 (7th Cir. 2014).

The FAA applies in federal court and to state-law claims brought in state court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[T]he FAA 'create[d] a body of federal substantive law,' which was 'applicable in state and federal courts.' We rejected the view that state law could bar enforcement of § 2, even in the context of state-law claims brought in state court.") (*citing Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-273 (1995)).

Specifically, Section 2 of the FAA provides in pertinent part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "The effect of [Section 2] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem. Hosp.*, 460 U.S. 1, 24 (1983). Accordingly, the FAA governs any (1) written arbitration provision (2) in a contract evidencing a transaction "involving commerce." In this action, the Arbitration Provisions satisfy both requirements.

*First*, the Arbitration Provision is in writing.

*Second*, the Contract indisputably is a contract "involving commerce." The FAA defines "commerce" as "commerce among the several states." 9 U.S.C. § 1. "The words 'involving commerce' are to be interpreted broadly since the FAA 'embodies Congress' intent to provide for

6

the enforcement of arbitration agreements within the full reach of the Commerce Clause.' The phrase 'evidencing a transaction' simply means that 'the 'transaction' in fact 'involves' interstate commerce, even if the parties did not contemplate an interstate commerce connection.'" *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 273 (1995) ("[W]e conclude that the word 'involving' is broad and is indeed the functional equivalent of 'affecting'"); *Perry v. Thomas*, 482 U.S. 483, 490 (1987); *Rota-McLarty v. SC Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) (holding that financing of auto loan via retail installment sale contract assigned to an out-of-state lender was "interstate commerce" and contract was governed by FAA: "The financing, which originated from a foreign state, was integral to [the plaintiff's] purchase of the used car from [the dealership]. We agree with sister circuits, which have concluded that reliance upon funds from a foreign source in a transaction is sufficient to implicate the FAA.").

Here, the Arbitration Provisions expressly states that it is governed by the FAA: "The parties acknowledge and agree that this clause and the Federal Arbitration Act…shall govern any and all Claims…between [Plaintiff]…and [HDFS]." HDFS' Decl., Exh. A. The Arbitration Provision's express designation of the FAA as its governing law, without more, is sufficient to bring it within the FAA's purview. *See, e.g., Tallman v. Eight Judicial Dist. Court*, 359 P.3d 113, 121-122 (Nev. 2015) (if loan documents stipulate a transaction involving interstate commerce and application of the FAA, the FAA applies).

Further, even if the Arbitration Provision did not designate the FAA as its governing law, the result is the same. Pursuant to the Contract, ESB, a Nevada corporation, provided Plaintiff, an Illinois citizen, with financing for the purchase of the Motorcycle. Compl. ¶¶ 8, 15; HDFS' Decl. ¶¶ 4, 6, 9. The Contract therefore "involves commerce" within the meaning of Section 2 of the FAA. *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (interpreting "involving

commerce" requirement under FAA broadly to include intra-state loan transaction: "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' – that is, 'within the flow of interstate commerce[.]'"); *Rota-McLarty*, 700 F.3d at 696-98; *Allied-Bruce Terminix Cos., Inc.*, 513 U.S. at 273-74; *United States v. Wadena*, 152 F.3d 831, 853 (8th Cir. 1998) (transactions with an FDIC-insured institution establish an interstate commerce nexus under the Commerce Clause even if the transactions are wholly intrastate), *cert. denied*, 526 U.S. 1050 (1999).

Accordingly, the FAA governs the Arbitration Provision, and as a result, the Court must apply federal substantive law under the FAA to determine whether the parties agreed to arbitrate this dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").

C.   **Plaintiff Is Required To Arbitrate These Claims Against HDFS.**

To be enforceable, an arbitration agreement must satisfy the following conditions: (1) the existence of a written agreement to arbitrate claims, (2) a nexus to interstate commerce, and (3) coverage of the claims by the arbitration clause. 9 U.S.C. § 2; *see also Hanks v. Briad Rest. Grp., L.L.C.,* No. 2:14-CV-00786-GMN, 2015 WL 4562755, at *2 (D. Nev. July 27, 2015). To succeed on its motion to compel arbitration, HDFS must show three things: "(1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.,* 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *Scheurer v. Fromm Family Foods LLC,* 863 F.3d 748, 752 (7th Cir. 2017)). The

8

court's limited role under the FAA is to determine (1) whether a valid agreement to arbitrate exists and (2) whether the agreement covers the dispute at issue. *Nguyen v. Barnes and Noble, Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014). It is generally presumed that if a motion to compel arbitration is filed, there is a refusal to arbitrate, and Plaintiffs further advised the Court and HDFS that she is refusing to arbitrate.

### 1. A Valid Arbitration Agreement Exists And Delegates Arbitration Determinations To The Arbitrator.

As detailed above, there can be no dispute that a valid arbitration agreement exists between Plaintiff and HDFS in accordance with the terms of the Contract executed on August 22, 2020. HDFS' Decl., ¶¶ 6-7, Exh. A. Here, Plaintiff admits entering into an agreement to purchase a Motorcycle from HDFS and executed the Contract. ECF No. 1 ¶¶ 15-16. Moreover, Plaintiff previously submitted her claims to arbitration, effectively conceding that the arbitration agreement is valid and enforceable. There is a valid agreement to arbitrate.

In any event, the Court need not address the threshold question of whether a valid and enforceable arbitration agreement exists between Plaintiff and HDFS because the parties expressly delegated this role to the arbitrator. The Arbitration Provision specifically provides that Claims "includ[e]…the applicability of this arbitration clause shall be resolved by neutral binding arbitration." HDFS.' Decl., ¶ 7, Exh. A. Under the FAA and Supreme Court precedent, "the question of who decides arbitrability is itself a question of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 527 (2019). The parties can agree to arbitrate threshold arbitrability questions "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 530 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)).

"[D]isputes concerning the arbitrability of a subject matter are resolved under a presumption in favor of arbitration." *City of Reno v. IAFF, LOCAL 731*, 340 P.3d 589 (2014) (citing *Clark Cnty. Public Employees Ass'n v. Pearson*, 798 P.2d, 136, 138 (1990)). To the extent that the arbitration clause is ambiguous, "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Pacificare of Nevada, Inc. v. Rogers*, 805, 266 P.3d 596, 600 (2011) (quoting *Int'l Assoc. of Firefighters v. City of Las Vegas,* 764 P.2d 478, 480 (1988). The "interpretation of the underlying contract is an issue for the arbitrator to decide, even though contract construction is generally a question of law," and even if the arbitrator is not an attorney. *Benson Pump Co. v. South Cent. Pool Supply, Inc.*, 325 F. Supp. 2d 1152, 1158 (D. Nev. 2004) (citing *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593, 599 (1960)). An agreement to submit a dispute over arbitrability to the arbitrator will be enforced where there is "'clear and unmistakable evidence' that the parties wanted an arbitrator to resolve the dispute." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013) (quoting *AT & T Techs. Inc. v. Commc'ns Workers,* 475 U.S. 643, 649 (1986)) (brackets omitted).

> As the Supreme Court explained:
>
> The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. This line of cases merely reflects the principle that arbitration is a matter of contract. An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69-70 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ([T]he question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter.").

Here, Plaintiff and HDFS agreed to submit the question of whether the dispute is subject to arbitration to the arbitrator. HDFS' Decl., Exh. A. Specifically, the parties agreed to arbitrate the "the applicability of this arbitration clause." *Id*. To the extent that any challenge to the arbitrability of the claim or dispute is made, the arbitrator, not the Court, should resolve these issues. *Rent-A-Center, West, Inc.*, 561 U.S. at 69 (holding delegation clause in arbitration provision grants arbitrator exclusive authority to resolve any dispute relating to the agreement's enforceability).

2. **Plaintiff's Claims Fall Within The Scope Of The Arbitration Provision.**

While arbitrability determinations should be left to the arbitrator because the parties' agreement includes a delegation clause, in any event, there can be no doubt that Plaintiff's claims against HDFS fall squarely within the scope of the Arbitration Provision. The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25; *see, e.g.*, *City of Reno*, 340 P.3d 589 (2014) (citing *Clark Cnty. Public Employees Ass'n v. Pearson*, 798 P.2d. 136, 138 (1990)). "[A]ny doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC,* 666 F.3d 1027, 1032 (7th Cir. 2012). "[A] court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gore*, 666 F.3d at 1032.

In this action, Plaintiff's claim relates to the Contract and actions by HDFS regarding her account. As detailed above, Plaintiff expressly agreed to arbitrate "any and all clams, controversies, or disputes" between herself and HDFS "arising out of or relating in any way to [her] loan or account, this Contract, advertising or claims relating to this Contract, or the sale of

11

this Contract, whether in contract, tort, statute, or otherwise." HDFS' Decl., Exh. A. Plaintiff's allegations specifically relate to her purchase of the Motorcycle, the Contract and contact made by HDFS regarding her account. Moreover, Plaintiff already submitted her claims to arbitration, thereby affirming that they fall within the scope of the arbitration provision. There can be no dispute that Plaintiff's causes of action are covered by the terms of the Arbitration Provision.

Accordingly, the Court should compel Plaintiff's claims to arbitration.

**D.      HDFS Has Not Waived Its Right To Arbitrate.**

HDFS understands that Plaintiff intends to argue that HDFS waived its right to arbitrate because the AAA declined administration of her initiation of arbitration proceedings because HDFS "failed to comply with AAA's policies regarding consumer claims." That argument is unavailing. HDFS did not waive its right to arbitrate this dispute as it has moved to compel arbitration at its earliest opportunity and in its initial responsive pleading. Further, HDFS has not participated in the litigation beyond the initial requests of the Court and it has not engaged in any discovery directed at Plaintiff. In addition, Plaintiff was not prejudiced by the arbitration clause registration issues as HDFS took quick steps to make sure the clause was properly registered.

In assessing whether a party waived its right to compel arbitration, the question is whether, "considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). Relevant factors for assessing waiver include whether the supposedly waiving party participated in litigation, substantially delayed its request for arbitration or participated in discovery, and whether the other party would be prejudiced. *Lillegard v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2017 WL 1954545, *2 (N.D. Ill. May 11, 2017).

Here, HDFS has not unreasonably delayed its demand for arbitration. Indeed, HDFS demanded that Plaintiff submit her claims to arbitration on August 9, 2021, well before it filed its responsive pleading and within a week of the action being filed on August 3, 2021. Further, HDFS has done all it could have been reasonably expected to do to make the earliest feasible determination, after this case was filed, to proceed with the case in arbitration. HDFS' first responsive pleading to the Complaint is its Motion to Compel Arbitration. In addition, HDFS noted its intent to move to compel arbitration in the Joint Status Report. ECF No. 11. There has been no delay in HDFS asserting its right to arbitrate. HDFS has not requested any discovery from Plaintiff, and it has not participated in the litigation beyond the Joint Status Report and its Motion to Compel Arbitration. Even if HDFS requested limited discovery or obtained Plaintiff's initial disclosures, it would not have waived its right to arbitrate. *See Fischer v. Instant Checkmate LLC*, No. 19-c-4892, 2021 WL 3033586 (N.D. Ill. Jul. 19, 2021) (finding that limited discovery related to arbitration is insufficient to waive right to arbitrate); *Taylor v. Samsung Electronics America, Inc.*, No. 19-c-4526, 2020 WL 1248655 (N.D. Ill. Mar. 16, 2020) (finding that a delay of fourth months between an answer and moving to compel arbitration, and receipt of initial disclosures, was insufficient to waive right to arbitrate).

HDFS has taken no action that is inconsistent with enforcing its right to arbitrate.

Further, Plaintiff was not unduly prejudiced by HDFS' alleged non-compliance with AAA policies regarding consumer claims. During July 2021, HDFS learned that the American Arbitration Association ("AAA") had not registered the June 2019 version of HDFS' arbitration clause. HDFS Decl. ¶ 10. Upon learning of this registration issue, HDFS subsequently took action to contact AAA, determine the appropriate steps for registration, and completed the registration process of the June 2019 version of the arbitration clause. *Id.* ¶ 11. HDFS submitted the June

2019 version of the arbitration clause to AAA for registration. *Id*. ¶ 12. As of October 18, 2021, AAA confirmed that the June 2019 version of the arbitration clause is registered with AAA. *Id*. ¶ 13. Plaintiff has suffered no prejudice as a result of HDFS' slight delay in registration of its arbitration clause. Plaintiff intended to bring this action in AAA, and may still do so.

**E.      The Court Should Stay This Action Pending Arbitration.**

Upon determining that a dispute is subject to arbitration, a court may either dismiss an action and compel arbitration or stay the proceedings during the pendency of arbitration. Here, HDFS respectfully requests the Court to stay the underlying action. "[T]he FAA provides for stays of litigation when an issue presented in the case is referable to arbitration." *Tinder v. Pinkerton Security,* 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 3).

HDFS requests the Court stay this action pending completion of the arbitration, pursuant to 9 U.S.C. §§ 3, 4.

## CONCLUSION

For the foregoing reasons, Harley-Davidson Financial Services respectfully requests that this Court (1) enforce the parties' Arbitration Clause; (2) order the parties to binding arbitration pursuant to the express terms of the Arbitration Clause; (3) stay the instant litigation pending resolution of the arbitration; and (4) award such other and further relief as the Court deems appropriate.

Dated:  October 25, 2021                                  Respectfully submitted,
                                                                                 By:      */s/ Blaec C. Croft*
                                                                                            Jarrod D. Shaw
                                                                                            Benjamin J. Sitter
                                                                                            Blaec C. Croft
                                                                                            McGuireWoods LLP
                                                                                            Tower Two-Sixty
                                                                                            260 Forbes Avenue, Suite 1800
                                                                                            Pittsburgh, PA 15222
                                                                                            Telephone: 412-667-7904
                                                                                            jshaw@mcguirewoods.com

        bsitter@mcguirewoods.com
        bcroft@mcguirewoods.com

*Attorneys for Defendant*
*Harley-Davidson Financial Services, Inc.*

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was electronically filed on this day, October 25, 2021, with the Clerk of the Court using the CM/ECF system which will send notice of service to all attorneys of record.

                                                    /s/ *Blaec C. Croft*
                                                    Blaec C. Croft